# EXHIBIT "A"

**U.S. DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
*Electronically filed*

CAROLINA LEONE, as Personal
Representative of the Estate of
LINA GAIL ODOM, deceased,

     Plaintiff,

v.                       Case File No.: 3:20-cv-1166-J-34JBT

ARMOR CORRECTIONAL
HEALTH SERVICES, INC.; MELISSA
PETERSON, RN; JAMES MILLER, RN;

     Defendants.

---

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

---

The Plaintiffs, CAROLINA LEONE, as Personal Representative of the Estate of LINA GAIL ODOM, deceased, for their Complaint against Defendants, state as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1. The Decedent, LINA GAIL ODOM (hereinafter referred to as "LINA ODOM" or "Ms. ODOM"), was at all relevant times a detainee in the custody and control of the Duval County Sheriff's Department at the John E. Goode Pre-trial Detention Facility (hereinafter referred to as the "PTDF").

2. The Plaintiff, CAROLINA LEONE, is the personal representative of

1

the estate of LINA ODOM. A copy of the Letters of Administration appointing CAROLINA LEONE as personal representative is attached as **Exhibit 1**.

3. The statutory survivors of LINA ODOM are DANIEL ANTONIO ODOM, surviving parents. The potential beneficiaries of LINA ODOM are DANIEL ANTONIO ODOM and the Estate of LINA ODOM, Deceased.

4. The Defendant, ARMOR CORRECTIONAL HEALTH SERVICES, INC. ((hereinafter referred to as "ARMOR"), was and is a for-profit corporation, formed and organized under the law of the state of Florida, with principal places of business at 4960 SW 72nd Avenue Suite 400, Miami, Florida 33155, and was engaged in the business of providing healthcare personnel and services in correctional and confinement settings.

5. At all times material hereto, ARMOR provided healthcare staff and services to the PTDF as part of a services agreement between ARMOR and Duval County Sheriff, Mike Williams. It is believed that ARMOR has copies of the service agreement.

6. The Defendant, MELISSA PETERSON, RN (hereinafter referred to as "RN PETERSON"), is a Florida licensed registered nurse engaged in the practice of providing correctional nursing care at the PTDF.

7. The Defendant, JAMES MILLER, RN (hereinafter referred to as "RN MILLER"), is a Florida licensed registered nurse engaged in the practice of providing correctional nursing care at the PTDF.

8. The PTDF, aka Duval County Jail, is a 2,189-bed detention facility

located in Jacksonville, Duval County, Florida, and is operated by the Duval County Sheriff,

9.  All actions giving rise to this lawsuit occurred in Duval County, Florida.

10.  All conditions precedent to filing this action have been complied with and met.  Notice pursuant to Fla. Stat. §768.28 was received by the appropriate agencies between March 27-30, 2020, and is attached hereto as **Exhibit 2**.

11.  Pursuant to § 766.104, Fla. Stat., the undersigned counsel certifies that a reasonable investigation has been conducted as to the matters alleged herein, and it has been determined that there are reasonable grounds for a good faith belief that there was negligence in the care and treatment of Ms. ODOM by the Defendants, and that grounds exist for the filing of this action against Defendants.

12.  Defendants RN PETERSON and RN MILLER are hereafter referred to collectively as the "ARMOR Nurses."

13.  Each of the Defendants was acting under color of law at all relevant times and with respect to all allegations in this Complaint.

14.  This is a claim brought pursuant to 42 U.S.C. § 1983 for violations of the decedent's constitutional rights under the Fourteenth Amendment to the United States Constitution.  The Complaint also asserts state law claims arising under Florida law, including claims pursuant to Florida Statutes §766.102, et

seq., the Florida Wrongful Death Act, the Florida Administrative Code.

15. Venue is proper in this Court because the alleged acts all occurred in Duval County, Florida.

## FACTS COMMON TO ALL COUNTS

16. Ms. ODOM was a detainee at the PTDF from April 4-5, 2018. At her initial health screening, Ms. ODOM was noted to have needle tracks up and down her arms and reported that she had suffered from drug withdrawal seizures in the past. Ms. ODOM also reported that she used both crack and heroin on a daily basis. As a result, Ms. ODOM was placed on drug withdrawal/detox protocols.

17. During her initial health screening on April 4, 2018, Ms. ODOM also reported that she had a history of hypertension and was supposed to be on Coreg, a medication used to treat high blood pressure, congestive heart failure, and left ventricular dysfunction. Ms. ODOM was released on April 5, 2018.

18. On April 22, 2018, at approximately 10:18 p.m., Ms. ODOM was arrested by the Jacksonville Sheriff's Office for prostitution. Prior to her arrest, Ms. ODOM informed the arresting officer that she was waiting for a friend to return with crack. Ms. ODOM was transferred and booked into the PTDF.

19. Ms. ODOM did not receive an initial healthcare screening upon arrival to the PTDF.

20. On April 23, 2018. at approximately 1:30 p.m., Ms. ODOM was assessed and evaluated by Maxine Davis, RN. RN Davis did not complete a

4

comprehensive medical screening and instead referred Ms. ODOM for a mental health screening due to her failure to respond to questioning.

21. At 1:35 p.m., Ms. ODOM received a mental health evaluation from Linda Latimer, LMHC. During that initial evaluation, Ms. ODOM stated that she had no mental health problems and no suicidal thoughts. Ms. ODOM informed the mental health counselor that she was "dope sick" and that she was sent for mental health evaluation because she kept falling asleep during questioning.

22. Ms. ODOM also reported to LMHC Latimer that she had a history of drug addiction and recent drug use to include daily use of heroin, which she used prior to her arrest. Ms. Odom was noted to be lethargic, disheveled, and mildly disoriented. As a result of her evaluation, LMHC Latimer advised that she remain segregated in order to rule out several opioid use disorders and opioid withdrawal.

23. LHMC Latimer contacted medical RN MILLER and informed that Ms. ODOM needed to be referred to medical for implantation of withdrawal protocols. Of note, RN MILLER had full access to Ms. ODOM's prior correctional healthcare records, including those from April 4-5, 2018, indicating that she had a history of withdrawal seizures and had an underlying health condition that required the use of Coreg.

24. At 1:59 p.m., RN MILLER ordered day shift and night shift detox/withdrawal checks. Despite that order, detox/withdrawal checks were not

5

performed on April 23, 2018.

25.    At 8:12 a.m., April 24, 2018, Ms. ODOM was assessed and evaluated by Suzanne Kempfert, RN, as part of detox/withdrawal protocols.  While vital signs were recorded, they are noted as having been taken some time during the April 23rd evening shift.  Repeat vital signs were not obtained.

26.    During the initial detox/withdrawal assessment, Ms. ODOM reported nausea and diarrhea.  RN Kempfert also recorded that Ms. ODOM was mildly anxious and was exhibiting agitation/restlessness.

27.    At 11:12 a.m., LMHC Latimer rounded on Ms. ODOM as part of "self-harm" rounds.  During that assessment, Ms. ODOM reported that she was still withdrawing but reiterated that she was not suicidal.  LMHC Latimer cleared Ms. ODOM for transfer to general housing.  There is no indication that Ms. ODOM was sent for a comprehensive nursing assessment prior to transfer to general housing.

28.    While the records indicate that Maxine Davis, RN rounded on Ms. Odom at 1:33 p.m., there is no indication that she was assessed pursuant to detox/withdrawal protocols. Ms. Odom's vital signs were not checked for the remainder of the day.

29.    Ms. ODOM was again rounded on by RN Davis at 12:15 p.m., April 25, 2018. Again, there is no indication that she was assessed pursuant to detox/withdrawal protocols.  Ms. Odom's vital signs were not checked for the

remainder of the day.

30.    Ms. ODOM was again rounded on by RN Davis at 1:19 p.m., April 26, 2018.  Again, there is no indication that she was assessed pursuant to detox/withdrawal protocols.  Ms. Odom's vital signs were not checked for the remainder of the day.

31.    On April 27, 2018, at approximately 2:23 a.m., Ms. ODOM was assessed and evaluated by RN PETERSON at the clinic.  During the encounter, Ms. ODOM reported vomiting.  While RN PETERSON's charting is incomplete, she noted "drug withdrawal" as an associated symptom.  RN PETERSON would have had full access to Ms. ODOM's prior health records indicating that she had a history of drug addiction, recent drug usage, and withdrawal seizures.  Despite her presenting condition, known history, and need for immediate medical care and attention, RN PETERSON did not request that Ms. ODOM be examined and evaluated by a medical doctor and instead returned her to general housing.

32.    At 6:51 a.m., Ms. ODOM returned to the clinic and was assessed and evaluated by RN MILLER.  During this encounter, RN MILLER noted that Ms. ODOM was "detoxing from IVD (intravenous drugs)" and that she was in detox protocols.  Vital signs were not taken, and there is no indication that a comprehensive nursing assessment was performed.  Despite a return to medical, apparent signs of detox complications, and the need for immediate medical care and attention, RN MILLER, did not request that Ms. ODOM be examined and

evaluated by a medical doctor, did not recommend that she remain in medical for monitoring

33. There is no indication that Ms. ODOM was assessed, evaluated, or checked on for the remainder of the day, aside from vital signs taken at 6:51 p.m.

34. At approximately 4:59 a.m., April 29, 2018, THOMPSON and GROVES responded to a medical distress call in dorm four related to Ms. ODOM. Upon arrival, THOMPSON and GROVES observed Ms. ODOM to have discoloration to her arms and legs. Ms. ODOM apparently could not stand or walk.

35. Deputy C. E. Thompson and S. Groves called for the transfer of Ms. ODOM to medical via wheelchair. A wheelchair arrived at 5:07 a.m., and at 5:09 a.m., Deputy S. Groves escorted Ms. ODOM to the clinic.

36. Ms. Odom arrived at the clinic at 5:15 a.m. Upon arrival to the clinic, Ms. ODOM was noted to be unresponsive, extremely pale, and cyanotic. Vital signs could not be obtained. CPR was initiated at 5:20 a.m., and 911 was called.

37. EMS arrived at 5:25 a.m., and Ms. ODOM was transferred to Shand's Hospital Jacksonville, where she was pronounced dead at 6:05 a.m.

38. At autopsy, Ms. ODOM's toxicology report was positive for cocaine.

39. Ms. ODOM's symptoms and detox/withdrawal complications would have been easily managed if she had received timely medical care and attention, and in that event, she would have survived with no permanent injury.

8

## COUNT I – 42 U.S.C. § 1983 Claim for Violation of the Fourteenth Amendment

40.     The Plaintiffs incorporate by reference the facts common to all counts (paragraphs 16-39) as if specifically set forth herein.

41.     While a detainee at the PTDF, Ms. ODOM suffered acute and sudden medical emergencies, including violent illness, inability to communicate, inability to walk, detoxification/withdrawal complications, vomiting, cyanosis, decreased respiration, all of which constituted serious medical needs requiring urgent emergency medical care.

42.     The ARMOR Nurses had actual knowledge of Ms. ODOM's serious medical needs through their direct observations, the nursing assessment and evaluations, their knowledge of Ms. ODOM's prior history, their knowledge of Ms. ODOM's recent history, and communication with Ms. ODOM.

43.     The serious medical needs suffered by Ms. ODOM progressively worsened while in the custody of the Defendants, and it was plainly obvious that if left unattended, they posed a substantial risk of serious harm to Ms. ODOM.

44.     Despite the obviousness of Ms. ODOM's serious medical needs, their actual knowledge of those needs, and the obviousness of the risk of serious harm posed by leaving those needs unattended, the ARMOR Nurses deliberately disregarded the risk of serious harm, did not attend to Ms. ODOM's serious medical needs, did not obtain timely and necessary medical care for her, did not timely take her to receive medical treatment, and did not take necessary steps to

appropriately monitor her despite her worsening condition.

45.   The ARMOR Nurses refused to arrange for Ms. ODOM to see a medical doctor or to remain in medical despite her worsening condition. It was apparent to the ARMOR Nurses at the time that their delay in obtaining medical care for Ms. ODOM's obviously serious condition would detrimentally exacerbate her medical condition.

46.   The ARMOR Nurses' delay in obtaining medical care for Ms. ODOM's obviously serious medical condition seriously exacerbated her condition and caused her death.

47.   The ARMOR Nurses' delay in obtaining medical care for Ms. ODOM's obviously serious medical condition was unjustified.

48.   The ARMOR Nurses' actions constitute deliberate indifference to Ms. ODOM's serious medical needs.

49.   The ARMOR Nurses' deliberate indifference to Ms. ODOM's serious medical needs caused Ms. ODOM's death.

50.   The ARMOR Nurses acted under the color of state law.

51.   The ARMOR Nurses' deliberate indifference to Ms. ODOM's serious medical needs deprived Ms. ODOM of her due process rights under the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

52.   Ms. ODOM's constitutional rights that were violated by the ARMOR Nurses were clearly established constitutional rights of which a reasonable

10

correctional nurse would have known at the time of the violation.

53.     The violation of Ms. ODOM's constitutional rights caused her pain, suffering, injury, and death, as well as consequential losses, bills, and damages, all of which the Plaintiffs are entitled to recover.

54.     The violation of Ms. ODOM's constitutional rights entitles Plaintiffs to an award of punitive damages and attorneys fees.

WHEREFORE, Plaintiffs demand judgment against Defendants, MELISSA PETERSON, RN; JAMES MILLER, RN; for compensatory damages, punitive damages, reasonable attorneys' fees, and any other relief which the Court deems appropriate.

## COUNT II – Medical Malpractice – RN PETERSON and RN MILLER

55.     The Plaintiffs incorporate by reference the facts alleged in paragraphs 22 through 39, and paragraphs 42 through 45, as if specifically set forth herein.

56.     At all times material hereto, there existed a provider-patient relationship between RN PETERSON/RN MILLER and Ms. ODOM.

57.     By virtue of that provider-patient relationship, Defendants, RN PETERSON and RN MILLER, had a duty to provide Ms. ODOM with nursing care and treatment consistent with the prevailing professional standard of care, which is that level of nursing care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by a reasonably prudent similar health care provider.

11

58.    At all times, medical/nursing care and treatment were being provided to Ms. ODOM; it was being provided pursuant to her constitutional right to receive adequate healthcare while in the custody of the Duval County Sheriff.

59.    Defendants, RN PETERSON and RN MILLER, was negligent and breached the prevailing professional standard of care with regards to the care and treatment provided to Plaintiff, Ms. ODOM, in the following respects:

    a.  Failing to provide timely and appropriate nursing care and treatment;
    b.  Failing to ensure that a complete and thorough intake screening was performed;
    c.  Failing to recommend that Ms. ODOM be housed in medical or an observation unit;
    d.  Failing to arrange for Ms. ODOM to see a medical doctor;
    e.  Failing to timely and appropriately respond to signs and symptoms of drug withdrawal;
    f.  Failing to timely and appropriately respond to Ms. ODOM's worsening condition;
    g.  Failing to employ and/or properly utilize detox protocols;
    h.  Improperly returning Ms. ODOM to general housing;
    i.  Failing to ensure that detox/withdrawal checks were timely performed;
    j.  Failing to take vital signs;
    k.  Failing to perform a comprehensive nursing assessment and evaluation;
    l.  Failing to inform attending physician of Ms. ODOM's condition;

60.    As a direct and proximate result of the acts and/or omissions of Defendants, RN PETERSON and RN MILLER, hereinabove alleged, the Plaintiff, Ms. ODOM, suffered an untimely and wrongful death.

61.    As a result of LINA ODOM's death, the Plaintiffs suffered the

12

following damages, which they are permitted to recover pursuant to the Florida Wrongful Death Act, Fla. Stat.§768.16 – 26:

    a. Estate of LINA ODOM: Medical and funeral expenses paid to date and loss of prospective earnings.

WHEREFORE, Plaintiffs demand judgment against Defendants, MELISSA PETERSON, RN and JAMES MILLER, RN; for compensatory damages and costs, and any other relief which the Court deems appropriate.

**COUNT III – Vicarious Liability – ARMOR CORRECTIONAL HEALTH SERVICES, INC. for the negligence of their employees, RN PETERSON and RN MILLER**

62. The Plaintiffs incorporate by reference the facts alleged in paragraphs 16 through 39 as if specifically set forth herein.

63. By virtue of the employer-employee relationship that existed between ARMOR CORRECTIONAL HEALTH SERVICES, INC. and RN PETERSON and RN MILLER, at the time they provided care and treatment to Ms. ODOM, Defendant, ARMOR CORRECTIONAL HEALTH SERVICES, INC., is vicariously liable for RN PETERSON and RN MILLER's negligent conduct, as all care and treatment were rendered within the course and scope of their employment.

64. RN PETERSON and RN MILLER were negligent in their care and treatment of Ms. ODOM as described in paragraphs 16 through 39, and COUNT II.

65.    At all times material hereto, there existed a provider-patient relationship between RN PETERSON/RN MILLER and Ms. ODOM.

66.    As a direct and proximate result of the acts and/or omissions of Defendants, RN PETERSON and RN MILLER, hereinabove alleged, the Plaintiff, Ms. ODOM, suffered an untimely and wrongful death.

67.    As a result of LINA ODOM's death, the Plaintiffs suffered the following damages, which they are permitted to recover pursuant to the Florida Wrongful Death Act, Fla. Stat.§768.16 – 26:

   a   Estate of LINA ODOM: Medical and funeral expenses paid to date and loss of prospective earnings.

WHEREFORE, Plaintiffs demand judgment against Defendant, ARMOR CORRECTIONAL HEALTH SERVICES, INC. for compensatory damages and costs, and any other relief which the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

RESPECTFULLY SUBMITTED this 21st day of October 2021.

*/s/ Jack T. Cook*

JACK T. COOK
Florida Bar #0088589
MORGAN & MORGAN,
P.A.
20 N. Orange Avenue, Suite 1600
P.O. Box 4979
Orlando, FL 32802
Phone: (407) 420-

14

6926 Fax:        (407)
245-3458
jcook@forthepeople.com
Secondary: ksuarez@forthepeople.com
Attorneys for Plaintiffs

15